UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>AAA CASH ADVANCE, INC. and DIANA BRIGITT,<br><br>　　　　Defendants. | CR No. CR12-0559<br><br>I N D I C T M E N T<br><br>[31 U.S.C. §§ 5324(a)(1), (d)(2): Causing a Financial Institution to Fail to File a Currency Transaction Report; 31 U.S.C. §§ 5318(h), 5322: Failure to Maintain an Effective Anti-Money Laundering Program; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 31 U.S.C. § 5317(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times material to this Indictment:

A.　THE BANK SECRECY ACT

　　1.　The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5313-5326, was a set of laws and regulations enacted by Congress to address an increase in criminal money laundering through financial institutions.

2. Check cashers qualified as financial institutions within the meaning of the BSA. A check casher was someone engaged in the business of cashing checks for other people in amounts greater than $1,000 in currency (such as cash) or other monetary instruments, for any person, on any day, in one or more transactions. A check casher would typically charge a fee for this service. Check cashers enabled people to cash checks without having to go to a bank or otherwise have a bank account.

3. One of the BSA mechanisms to uncover criminal activity conducted through financial institutions was a requirement that check cashers and other financial institutions file a "Currency Transaction Report" ("CTR"), FinCEN Form 104, with the Department of the Treasury, for any transaction involving more than $10,000 in currency.

4. Title 31, United States Code, Section 5313(a) and related regulations, including Title 31, Code of Federal Regulations ("C.F.R."), Section 103.22(c), required that financial institutions such as check-cashers treat multiple currency transactions as a single transaction and file a CTR if the financial institution had knowledge that the multiple transactions were by or on behalf of any person and resulted in either cash in or cash out totaling more than $10,000 during any one business day.

5. A CTR consisted of three parts. Part I required the financial institution to verify and accurately record the name and address of the individual who conducted a reportable currency transaction, as well as to accurately record the identity, social security number, or taxpayer identification number of any person

or entity on whose behalf the currency transaction was conducted. Part II required the financial institution to record the date, the amount of the transaction, and the form of the transaction. Part III required the name of the financial institution where the transaction occurred, the person completing the CTR, and the person approving the completion and filing of the CTR.

6. CTRs were filed with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Department of the Treasury.

7. In addition, the BSA required check cashers to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent the check casher from being used to facilitate money laundering. Title 31, C.F.R. § 1022.210, eff. Mar. 1, 2011, formerly Title 31, C.F.R. § 103.125. The program was required to have written policies, procedures and controls governing the verification of customer identification, the filing of reports such as CTRs, the creation and retention of records, responses to law enforcement requests, and other compliance with BSA requirements. As part of the program, the check casher was required to have a compliance officer, who was responsible for assuring that the business complied with all BSA requirements.

8. Despite these regulations, check cashers were still a common venue for individuals who wanted to cash large numbers of checks anonymously to facilitate fraud and money laundering schemes, particularly in the area of health care fraud. Individuals engaged in such conduct commonly converted the proceeds of their fraud into cash by presenting checks to check cashers who they knew would not ask for proof of the payee's

identity and would either file CTRs with false information or not file CTRs at all.

B. THE DEFENDANTS

9.  Defendant AAA Cash Advance, Inc. ("AAA") was a check cashing business incorporated in the State of California, with its principal place of business at 1771 West Jefferson Boulevard, Los Angeles, California, within the Central District of California. Defendant AAA was registered with FinCEN as a money service business and was a "financial institution," as that term is defined in Title 31, United States Code, Section 5312(a)(2)(k) and accompanying regulations. As a result, defendant AAA was subject to the CTR reporting requirements of the BSA.

10.  Defendant DIANA BRIGITT ("defendant BRIGITT") was the manager of defendant AAA. Defendant BRIGITT oversaw the day-to-day operations of defendant AAA, such as supervising the front desk employees, approving transactions, and withdrawing currency from defendant AAA's bank accounts for operational purposes.

C. CHECK CASHING CONDUCT AT DEFENDANT AAA

11.  Beginning in or around August 2010, and continuing through in or around February 2012, defendant BRIGITT, on behalf of defendant AAA, repeatedly cashed bundles of checks totaling over $10,000 in one business day, knowing that the multiple transactions were by and on behalf of one person, without filing a CTR.

12.  Initially, the checks were written on the account of a non-existent health care business. Later, the checks were written on the account of a fictitious physician. The checks were presented to defendant BRIGITT by a confidential witness

("CW") who presented himself as the owner of the health care business and the medical practice on whose accounts the checks were drawn. The checks were made out to a variety of fictitious individuals and entities.

13. At times, defendant BRIGITT herself accepted the bundled checks from the CW. At other times, the CW placed the checks in an envelope and delivered it to an employee of defendant AAA with instructions to deliver the envelope to defendant BRIGITT.

14. Defendant BRIGITT or other individuals would deposit the bundled checks into defendant AAA's bank accounts and the bank accounts of other check cashing companies. Several days later, defendant BRIGITT would return, or cause the return, of currency in excess of $10,000 to the CW. Defendant BRIGITT delivered the currency in excess of $10,000 either directly to the CW or by directing an employee of defendant AAA to provide the currency to the CW or by leaving the currency in an envelope for the CW to pick up from one of the other employees of defendant AAA.

15. In exchange for this service, defendant AAA charged a fee of 3% of the total transaction amount.

16. At no time during this period did defendant BRIGITT, defendant AAA, or any of the employees of defendant AAA ask the CW for any identification or any identification documents regarding either the payors or payees named on the checks the CW presented.

17. In order to have currency to provide to its customers, defendant BRIGITT and other employees with defendant AAA made

1 | cash withdrawals in excess of $10,000 from defendant AAA's bank
2 | accounts and other check cashing companies' accounts. Defendant
3 | AAA's banks, in turn, would file CTRs on such currency
4 | withdrawals.

     18.  From in or about January 2008, until in or about February 2012, defendant AAA's banks filed CTRs indicating that defendant AAA had withdrawn approximately $5 million in cash withdrawals of more than $10,000 each. Defendant AAA, on the other hand, filed only 7 CTRs during the same time period for currency that it had provided to its customers in amounts greater than $10,000 on any single day. Furthermore, defendant AAA did not file any CTRs for transactions in which it provided amounts greater than $10,000 to the CW in a single day.

## COUNTS ONE THROUGH EIGHT
[31 U.S.C. §§ 5324(a)(1), (d)(2); 18 U.S.C. § 2]

19. The Grand Jury hereby repeats and realleges paragraphs 1 through 18 of this indictment, as though fully set forth herein.

20. On or about the dates set forth below, within the Central District of California and elsewhere, defendant BRIGITT, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause AAA, a domestic financial institution, to fail to file a report required under Section 5313(a) of Title 31, specifically, a Currency Transaction Report - FinCEN Form 104, for the transactions set forth below:

| COUNT | APPROXIMATE TRANSACTION DATE | CHECK NUMBERS | CASH TOTAL |
|---|---|---|---|
| 1 | 8/12/10 | 1049, 1050, 1051, 1061, 1062, 1063 | $13,580 |
| 2 | 9/2/10 | 1034, 1035, 1036, 1052, 1053, 1054 | $11,640 |
| 3 | 10/8/10 | 1076, 1077, 1078, 1082, 1083, 1084 | $11,640 |
| 4 | 12/13/10 | 1091, 1092, 1093, 1097, 1098, 1099 | $11,640 |
| 5 | 2/5/11 | 1065, 1017, 1106, 1107, 1108 | $10,670 |
| 6 | 11/9/11 | 126, 127, 128, 129, 130, 131 | $10,670 |
| 7 | 2/2/12 | 132, 133, 134, 135, 1196 | $13,580 |
| 8 | 2/13/12 | 136, 137, 138, 139, 140, 141, 1151 | $17,000 |

## COUNT NINE

[31 U.S.C. §§ 5318(h) and 5322; 18 U.S.C. § 2]

21. The Grand Jury hereby repeats and realleges paragraphs 1 through 18 of this Indictment, as though fully set forth herein.

22. From in or about August 2010, and continuing until in or about February 2012, in the Central District of California and elsewhere, defendants AAA, a domestic financial institution and money services business, and BRIGITT, did willfully violate the Bank Secrecy Act, Title 31, United States Code, Sections 5318(h)(2) and 5322, and regulations issued thereunder, specifically, Title 31, Code of Federal Regulations, Section 103.125(a) (now renumbered Section 1022.210(a)), by failing to develop, implement, and maintain an effective anti-money laundering program.

23. Specifically, defendants AAA and BRIGITT knowingly and willfully failed to implement and maintain effective policies, procedures, and internal controls for defendant AAA for (1) verifying customer identification, in particular as to customers receiving in excess of $10,000 in currency in a single day, as required by the BSA; and (2) filing CTRs for currency transactions in excess of $10,000 conducted by or on behalf of the same person on the same day.

24. Defendants AAA and BRIGITT took actions designed to prevent the implementation and maintenance of an effective anti-money laundering program, in that they:

      i. failed to file CTRs as required for currency transactions exceeding $10,000 that were conducted by or on behalf of the same person on the same day;

      ii. cashed checks for fictitious payors without obtaining any identification from the purported owner of the payors;

      iii. instructed the CW on methods for avoiding detection of the fact that the CW was cashing over $10,000 in checks in a single day, such as making the checks out in small amounts, and making them payable to individuals and unknown businesses rather than recognizable, real businesses;

      iv. cashed checks made out to payees defendant BRIGITT knew to be fictitious and to additional fictitious payees without requiring any identification documents regarding the payees; and

      v. delivered the cash to the ostensible payor on the checks rather than the purported payees.

## FORFEITURE ALLEGATION

[31 U.S.C. § 5317(c)]

1. The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts One through Eight of this Indictment above as though fully set forth in their entirety herein for the purpose of alleging forfeiture pursuant to the provisions of Title 31, United States Code, Section 5317(c).

2. Defendant BRIGITT, if convicted of any of the offenses charged under Counts One through Eight of this Indictment, shall forfeit to the United States the following property:

   a. All right, title, and interest in any and all property involved in the offense committed in violation of Title 31, United States Code, Section 5324(a)(1), for which defendant BRIGITT is convicted, and all property traceable to such property, including the following:

   (1) all money or other property that was the subject of each transaction conducted in violation of Title 31, United States Code, Section 5324(a)(1);

   (2) all property traceable to money or property described in this paragraph 2.a.(1).

   b. A sum of money equal to the total amount of money involved in each offense committed in violation of Title 31, United States Code, Section 5324(a)(1), for which defendant BRIGITT is convicted.

3. If, as a result of any act or omission by defendant BRIGITT, any of the foregoing money or property (a) cannot be located upon the exercise of due diligence; (b) has been

transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty, then any other property or interests of defendant BRIGITT, up to the value of the money and property described in the preceding paragraph of this Indictment, shall be subject to forfeiture to the United States.

A TRUE BILL

/S/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Fraud Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DAVID KIRMAN
Assistant United States Attorney
Major Frauds Sections

JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and Money Laundering Section
U.S. Department of Justice

MATTHEW KLECKA
Trial Attorney

MATTHEW S. HASLINGER
Trial Attorney