ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
MATTHEW KLECKA
Trial Attorney
Asset Forfeiture and Money Laundering Section
United States Department of Justice
DAVID L. KIRMAN (Cal State Bar No.: 235175)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4442 (Kirman)
     Telephone: (202) 307-1309 (Klecka)
     Facsimile: (213) 894-2387
     E-mail:   david.kirman@usdoj.gov
               matthew.klecka@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. CR 12-559-DMG |
|---|---|
| Plaintiff, | ) <u>UNITED STATES' SENTENCING POSITION FOR DEFENDANT AAA CASH ADVANCE, INC.</u> |
| v. | ) |
| AAA CASH ADVANCE, INC. | ) Sentencing: October 15, 2012 at 10:00 a.m. |
| Defendant. | ) |

   Plaintiff United States of America, by and through its attorneys of record, Trial Attorney Matthew Klecka and AUSA David L. Kirman, hereby submits its position regarding sentencing for defendant AAA Cash Advance, Inc.  The government's sentencing

position is based upon the attached memorandum of points and authorities, the files and records in this case, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

Date: October 1, 2012

        ANDRÉ BIROTTE JR.
        United States Attorney

        ROBERT E. DUGDALE
        Assistant United States Attorney
        Chief, Criminal Division

        /s/ DAVID L. KIRMAN
        DAVID L. KIRMAN
        Assistant United States Attorney
        Major Frauds Section

        /s/ MATTHEW KLECKA
        MATTHEW KLECKA
        Trial Attorney
        U.S. Department of Justice
        Criminal Division
        Asset Forfeiture and Money
        Laundering Section

        Attorneys for Plaintiff
        United States of America

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

Defendant AAA Cash Advance, Inc. ("defendant") was a check cashing store which willfully failed to maintain an effective anti-money laundering policy ("AML Policy").  As part of its failure, defendant failed to file currency transaction reports ("CTRs") and failed to check its customers' identification.  In failing to maintain an effective AML Policy, defendant facilitated money laundering by allowing its customers to engage in currency transactions without any oversight from law enforcement or regulators.

On September 12, 2012, defendant pled guilty to count 9 of the indictment which alleged a willful failure to maintain an effective anti-money laundering program, in violation of 31 U.S.C. §§ 5318(h), 5322 and 18 U.S.C. § 2.  The plea was pursuant to a plea agreement.  Both defendant and the United States agreed to sentencing without a presentence report ("PSR").

For the purposes of sentencing, the United States respectfully requests that the Court adopt the following portions of the plea agreement: the factual basis, sentencing guidelines, and joint recommendation regarding a $6,000 fine, $3,012 in disgorgement, and a $400 special assessment.  The government also requests that the Court impose the statutory-maximum period of probation of five years.

**II.  Facts**[1]

Throughout the time period at issue, defendant was a check cashing store located at 1771 West Jefferson Boulevard, Los Angeles, California.  As a check cashing store, defendant was a money service business and financial institution within the meaning of the Bank Secrecy Act ("BSA").  Defendant was engaged in the business of, among other things, cashing checks for other people for currency.  Defendant typically charged a fee for this service.

Defendant was aware that the BSA required financial institutions like AAA Cash Advance to file a "Currency Transaction Report" ("CTR") with the Department of Treasury, for any transaction involving more than $10,000 in currency on a single day.  For the purposes of filing a CTR, defendant knew that the BSA required defendant to aggregate multiple currency transactions and treat them as a single transaction if the multiple transactions were by or on behalf of one person and resulted in either cash-in or cash-out totaling more than $10,000 during any one business day.

In addition, defendant was aware that the BSA required defendant to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent defendant from being used to facilitate money laundering. Defendant also knew that the program was required to have written policies, procedures and controls governing the verification of customer identification, the filing of reports such as CTRs, the

---

[1] Defendant admitted to these facts in the plea agreement and at the change of plea.

1  creation and retention of records, response to law enforcement
2  requests, and other compliance with BSA requirements, and that
3  defendant was required to have a compliance officer, who was
4  responsible for assuring that the business complied with all BSA
5  requirements.
6      Beginning in or around August 2010, and continuing through
7  in or around February 2012, defendant, through its agent,
8  repeatedly cashed bundles of checks totaling over $10,000 in one
9  business day, knowing that the multiple transactions were by and
10 on behalf of one person, without filing a CTR.  The checks were
11 presented to defendant by an individual who presented himself as
12 the owner of a health care business and a medical practice on
13 whose accounts the checks were drawn.  Defendant, through its
14 agent, had knowledge that the payees' names on the checks were
15 not the individuals actually receiving the cash.  Defendant did
16 not require that the individual presenting the checks provide any
17 identification or any identification documents regarding either
18 the payors or payees named on the checks the individual
19 presented.  Additionally, defendant, through its agent,
20 instructed the individual to write multiple checks for amounts
21 less than $10,000, but in the aggregate, totaling more than
22 $10,000 to facilitate the avoidance of AAA Cash Advance's CTR
23 reporting requirement.  In exchange for this service, defendant
24 charged a fee of 3%.  On August 12, 2010, September 2, 2010,
25 October 8, 2010, December 13, 2010, February 5, 2011, November 9,
26 2011, February 2, 2012, and February 13, 2012, defendant
27 improperly failed to file CTRs on $100,420 worth of checks that
28

required CTRs.  Defendant received approximately $3,012 (3%) in check cashing fees from its violations.

Defendant accepted the individual's bundled checks and deposited the checks into its bank accounts and in bank accounts of other check cashing stores.  Several days later, defendant returned currency in excess of $10,000 to the individual.  At no time during this period did defendant file a CTR to document the transactions in currency in amounts greater than $10,000 with the customer on a single day.

Defendant was responsible for implementing an effective anti-money laundering program.  Defendant knew that the BSA required it to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent defendant from being used to facilitate money laundering. Defendant knew that the program was required to have, among other things, procedures and controls governing the verification of customer identification, the filing of reports such as CTRs, the creation and retention of records, response to law enforcement requests, and other compliance with BSA requirements.  Despite this knowledge, the defendant failed to have such a program and further failed to (a) obtain identification from certain customers; and (b) file CTRs when they were required.

**III. PENALTIES AND SENTENCING GUIDELINES**

For this defendant, the statutory maximum sentence that the Court can impose for a violation of 31 U.S.C. §§ 5318(h), 5322 is: five years probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest per 18 U.S.C. § 3571; and a mandatory special assessment

of $400 per 18 U.S.C. § 3013(a)(2)(B).  The Court may also order disgorgement pursuant to U.S.S.G § 8C2.9.

The parties have stipulated to the following sentencing guidelines which are applicable to a violation of §§ 5318(h), 5322:

| | | | |
|---|---|---|---|
| Base Offense Level : | 8 | U.S.S.G. § 2S1.3(a)(1) | |
| **Total Offense Level :** | **8** | | |
| Base fine: | 8 | U.S.S.G § 8C2.4(d) - $10,000 | |
| Base culpability: | 5 | U.S.S.G § 8C2.5(a) | |
| Culpability reduction for acceptance of responsibility: | -1 | U.S.S.G § 8C2.5(g)(3) | |
| Multiplier: | .08-1.6 | U.S.S.G § 8C2.6 | |
| **Total Fine Range  :** | **$  6,000 - 16,000** | | |

The parties have also stipulated that pursuant to U.S.S.G § 8C2.9 that defendant should disgorge the fees it collected based on the transactions in the indictment.  Of the $100,420 worth of checks cashed with defendant by the individual that required CTRs, defendant received approximately $3,012 (3%) in check cashing fees.  Therefore, the Court should order $3,012 in disgorgement.

The government also requests that the Court impose the statutory-maximum term of probation of five years.[2]

**IV.  SECTION 3553(a) FACTORS**

The government believes that a sentence of five years probation, a fine of $6,000, disgorgement of $3,012, and a $400

---

[2] Defendant has notified the government it concurs in the recommendation of a five-year period of probation.  If, after defendant pays its monetary penalties, dissolves and surrenders its license prior to the termination of its probation, the parties will file a stipulation for early termination of probation.

7

special assessment is reasonable in light of the sentencing factors the Court must consider under 18 U.S.C. § 3553(a). There are a number of factors that counsel in favor of the government's recommended sentence. The failure to maintain an effective AML policy is a serious offense. Such policies are important because they include reporting requirements which assist law enforcement in ferreting out criminal activity. <u>California Bankers Ass'n v. Shultz</u>, 416 U.S. 21, 38 (1974).

In mitigation, the defendant's criminal conduct appears attributable to one employee, Diana Brigitt. Moreover, after it was charged, defendant shut down its business and accepted full responsibility for its conduct. Defendant also intends to dissolve the corporation following payment of the penalties in this matter and will likely lose its license to cash checks in any event. In its plea agreement, defendant has also stipulated to monetary penalties and has stated it will pay them in full within 30 days of the Court's judgement. Therefore, the government's recommended sentence will protect the public from further crimes of defendant. The criminal conviction, statutory-maximum term of probation, and other penalties are also sufficient to deter other check cashers from similar criminal conduct and to encourage them to maintain effective AML policies.

///
///
///
///
///
///

**IV.   CONCLUSION**

   The government respectfully requests that the Court sentence defendant to: a five-year period of probation; a $6,000 fine; disgorgement of $3,012; and a $400 special assessment.

Date: October 1, 2012

    ANDRÉ BIROTTE JR.
    United States Attorney

    ROBERT E. DUGDALE
    Assistant United States Attorney
    Chief, Criminal Division

    /s/ DAVID L. KIRMAN
    DAVID L. KIRMAN
    Assistant United States Attorney
    Major Frauds Section

    /s/ MATTHEW KLECKA
    MATTHEW KLECKA
    Trial Attorney
    U.S. Department of Justice
    Criminal Division
    Asset Forfeiture and Money
    Laundering Section

    Attorneys for Plaintiff
    United States of America